IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LUPIN PHARMACEUTICALS, INC., *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil Action No. RDB-15-1281 |
| CRAIG RICHARDS, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this case, Plaintiffs Lupin Pharmaceuticals, Inc.[1] ("Lupin Pharmaceuticals") and Lupin, Ltd. ("Lupin India") (collectively, "the Lupin Plaintiffs") seek to enjoin Defendant Craig Richards, the Attorney General of Alaska, ("the Attorney General") from issuing a civil investigative demand ("CID") to the Lupin Plaintiffs and from applying Alaskan antitrust law to the Lupin Plaintiffs. The Attorney General has moved to dismiss this action, arguing that this Court should abstain from exercising its jurisdiction under the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). The parties' submissions have been reviewed, and this Court held a hearing on June 26, 2015 on the Motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants Craig Richards' Motion to Dismiss (ECF No. 23) is GRANTED, and this case is DISMISSED.

## BACKGROUND

---

[1] Lupin Pharmaceuticals, Inc is a Virginia corporation with its headquarters and principal place of business located in Baltimore, Maryland. Pls.' Comp. ¶ 10. Lupin Pharmaceuticals distributes prescription medications to American customers and is a wholly owned subsidiary of co-Plaintiff Lupin, Ltd. ("Lupin India"). *Id.*

1

This Court accepts as true the facts alleged in plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This dispute arose out of issues pertaining to two drugs, Loestrin FE 24 and Effexor XR. These drugs are manufactured and sold by Warner-Chilcott and Wyeth, respectively, and those companies hold patents on the drugs. *See* Compl., ¶ 16. The Lupin Plaintiffs allege that neither Lupin Pharmaceuticals, Inc. nor Lupin, Ltd.[2] ("Lupin India") had rights to sell the drugs or approval to sell generic versions. *Id.* The Lupin Plaintiffs had filed applications with the Food & Drug Administration ("FDA") in 2006 and 2009 to sell generic versions of the respective drugs, but the brand manufacturers sued the Lupin Plaintiffs for declaratory judgments stating that the sale of such generics would violate their patents.[3] *Id.* at ¶ 17. The Lupin Plaintiffs settled the patent claims in 2009 and 2010 respectively. *Id.* at ¶¶ 17-18.

---

[2] Lupin India is incorporated in India and has its headquarters and principal place of business in Mumbai, India. Pls.' Compl. ¶ 11. Lupin India develops and manufactures branded and generic drugs in India.

[3] Specifically, the Lupin Plaintiffs alleged:
> Neither LPI nor Lupin India has ever sold Loestrin or Effexor nor have they ever obtained approval from the Food and Drug Administration ("FDA") to sell generic versions of those products. On September 30, 2006, Plaintiffs filed with the FDA an Abbreviated New Drug Application ("ANDA") seeking FDA approval of a generic version of Effexor. On March 13, 2007, Wyeth, the branded manufacturer of Effexor, sued SPI for a declaratory judgment that LPI's generic version of Effexnor would infringe Wyeth's patent. Wyeth and LPI settled the litigation on May 11, 2009.
> . . . On July 30, 2009, LPI filed an ANDA seeking FDA approval of a generic version of Loestrin. On September 9, 2009, Warner-Chilcott, the branded manufacturer of Loestrin, sued LPI for a declaratory judgment that LPI's generic version of Loestrin would infringe Warner Chilcott's patent. Warner-Chilcott and LPI settled the litigation on October 10, 2010.

Pls.' Compl. ¶¶ 17-18.

On February 3, 2015, pursuant to Alaska Stats. §§45.50.592[4] and 45.50.495, Attorney General Richards issued separate civil investigative demands (CIDs) to Lupin

---

[4] Section 45.50.592 states in full:

> (a) If the attorney general determines that a person is in possession, custody, or control of documentary evidence, wherever situated, that the attorney general believes to be relevant to an investigation authorized in AS 45.50.590, the attorney general may execute in writing and cause to be served on that person an investigative demand requiring the person to produce the documentary material, and permit inspection and copying.
> (b) Each demand must
>> (1) state the specific statute the alleged violation of which is under investigation, and the general subject matter of the investigation;
>> (2) describe, with reasonable specificity so as fairly to indicate the material demanded, the documentary material to be produced;
>> (3) prescribe a return date within which the documentary material is to be produced; and
>> (4) identify the state employees or representatives to whom the documentary material is to be made available for inspection and copying.
> (c) A demand may not
>> (1) require the production of documentary material that would be privileged from disclosure if demanded by a subpoena duces tecum issued by a court of the state; or
>> (2) contain a requirement that would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of the state; however, this does not limit the power of the attorney general to require production of documents located outside the state that pertain to matters affecting the state.
> (d) The demand may be served by the attorney general or the designee of the attorney general by
>> (1) delivering a copy of it to the person to be served or, if the person is not a natural person, to an officer of the person to be served;
>> (2) delivering a copy of it to a place of business in the state of the person to be served; or
>> (3) mailing by registered or certified mail a copy of it addressed to the person to be served at a place of business in the state or, if the person has no place of business in the state, to the principal office or place of business of the person.
> (e) Documentary material produced pursuant to a demand, or copies of it, unless otherwise ordered by a superior court for good cause shown, may not be produced for inspection or copying by, nor may its contents be disclosed to, anyone other than an authorized employee of the state without the consent of the person who produced the material. However, under those

3

Pharmaceuticals, Inc., and Lupin, Ltd., demanding production of three categories of documents related to the two drugs. *Id.* at ¶ 21. The CIDs state that "[t]he Attorney General seeks to determine whether the pharmaceutical manufacturers subject to [the CID]

---

reasonable terms and conditions the attorney general prescribes, copies of the documentary material shall be available for inspection and copying by the person who produced the material or an authorized representative of that person. The attorney general, or a designee, may use copies of the documentary material as the attorney general or designee considers necessary in the enforcement of AS 45.50.562-45.50.598, including presentation before a court; however, material that contains trade secrets may not be presented except with the approval of the court in which the action is pending after adequate notice to the person furnishing the material.
(f) At any time before the return date specified in the demand, or within 20 days after the demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside a demand issued under (a) of this section, stating good cause, may be filed in the superior court for the judicial district where the parties reside. A petition by a person on whom a demand is served, stating good cause, to require the attorney general or another person to act in accordance with the requirements of (e) of this section, and all other petitions in connection with a demand, may be filed in the superior court for the judicial district in which the person on whom the demand is served resides.
(g) A person on whom a demand is served under this section shall comply with the terms of the demand unless otherwise provided by an order of court issued in response to a petition filed under (f) of this section. A person who, with intent to avoid, prevent, or obstruct compliance, in whole or in part, with an investigative demand under this section, removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies, documentary material in the possession, custody, or control of a person that is the subject of a demand duly served on any person, or who otherwise wilfully disobeys any such demand, is guilty of a misdemeanor, and is punishable upon conviction by a fine of not more than $5,000, or by imprisonment for a term of not more than one year, or by both. Failure of the state to serve the demand properly under (d) of this section is a defense to prosecution under this subsection, but invalidity of the demand under (b) or (c) of this section is not a defense, and that invalidity may be tested only in an action under (f) of this section to modify or set aside the demand.
(h) Nothing in this section impairs the authority of the attorney general or a designee to lay before a grand jury of this state evidence concerning a violation of AS 45.50.562 - 45.50.596, to invoke the power of a court to compel the production of evidence before a grand jury, or to file a civil complaint or criminal information alleging a violation of AS 45.50.562 - 45.50.596.

4

violated Alaska state law by entering into a settlement agreement that terminated ongoing patent litigation regarding the brand name drug listed herein, and thereby delaying generic entry into the marketplace," in potential violation of Alaska antitrust and consumer protection statutes. *See* Mem. Supp. Mot. Dismiss 1-2, ECF No. 23-1.  The CIDs originally required production of responsive documents within sixty days. *Id.* at 2.  The Lupin Plaintiffs allege that the scope of the CIDs included filings with the Federal Trade Commission ("FTC") and Department of Justice ("DOJ"), documents produced in the patent litigations, documents discussing the validity of the patents, and agreements between Lupin and the branded manufacturers.  Pls.' Compl. ¶ 21.

Alaska law provides that the subject of a CID may within 20 days of service file a petition in Alaska Superior Court stating good cause why the CID should be modified or set aside. Alaska Stat. §45.50.592(f). The Lupin Plaintiffs declined to file any petition requesting modification of the CID.  It is undisputed, however, that the Lupin Plaintiffs requested to extend the time for compliance with the CIDs; the Attorney General granted those requests.  Thus, the deadline to produce documents responsive to the CIDs was May 4, 2015. Pls.' Compl. ¶23.

Instead of complying with or objecting to the CIDs, the Lupin Plaintiffs filed the present action on the May 4 deadline, and filed the Motion for Preliminary Injunction (ECF No. 4) on the following day.  The Complaint requests that this Court immediately issue a permanent injunction restraining Defendant from issuing civil investigative demands (CIDs) to Plaintiffs in connection with the Attorney General's investigation of Plaintiffs' compliance with Alaskan Antitrust laws, and from applying those state laws to Plaintiffs.  Plaintiffs also

request a declaratory judgment that Defendant's issuance of CIDs to Plaintiffs in connection with the Attorney General's investigation of Plaintiffs' compliance with Alaskan antitrust laws regarding the drugs was unconstitutional. The Plaintiffs also seek attorneys' fees and damages.

On May 22, 2015, the Attorney General filed a motion for extension of time to respond, noting that the assistant attorney general assigned to the case (Clyde Sniffen, Jr.) was on vacation when this case was filed and that an extension was needed to allow time for Sniffen to "return from vacation on May 27, 2015 to review the pleadings in this case, confer with Attorney General Richards, and prepare a response to the motion for preliminary injunction." The motion was opposed by the Plaintiffs but was granted by this Court.

On June 1, 2015, the Attorney General filed a petition in Alaska Superior Court for an order to show cause why the Lupin Plaintiffs should not be held in contempt for failure to respond to the CIDs pursuant to Alaska Stat. § 45.50.592(g).[5] On June 1, 2015, the Attorney General also filed the subject Motion to Dismiss (ECF No. 23) and a Motion to Stay the Motion for Preliminary Injunction (ECF No. 24) in this Court.

This Court held a teleconference on June 3, 2015. As a result of that call, the Motion to Stay the Motion for Preliminary Injunction was granted, and this Court established a briefing schedule for the motion to dismiss. This Court held a hearing on the Motion to Dismiss on June 26, 2015.

STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for

---

[5] The Court refers to this case as "the Alaska Proceeding."

lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

ANALYSIS

The main issue before this Court is whether this Court should abstain from exercising its jurisdiction over this case under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).[6] Of course, federal courts have a "virtually unflagging" obligation to hear and decide those cases for which they have jurisdiction. *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citing *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800 (1976)). Certain "exceptional circumstances," however, "justify a federal court's refusal to decide a case in deference to the States." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)). The first case involving such an "exceptional circumstance" was *Younger*, where the United States Supreme Court held that considerations of federalism and comity required federal courts to abstain from exercising their equity jurisdiction to enjoin ongoing state criminal prosecutions. Subsequently, the Supreme Court found that such considerations also justified abstention where there were "state civil proceedings that [were] akin to criminal prosecutions" or state proceedings "that implicate[d] a State's interest in enforcing the orders and judgments of its courts." *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The Supreme Court's most recent opinion addressing *Younger* abstention—*Sprint Communications, Inc. v. Jacobs*—does not purport to diverge from the Court's previous *Younger* jurisprudence; however, the Court noted that its

---

[6] This Court recognizes that the Defendant Attorney General raised several other issues in its motion to dismiss, including arguments pertaining to failure to state a claim under Rule 12(b)(6) under the Dormant Commerce Clause of the United States Constitution, *see* U.S. Const. art. 1, § 8, cl.3, ripeness doctrine, absolute prosecutorial immunity, and qualified immunity. These issues were fully briefed, although the majority of the parties' papers focused on the abstention issue, and argument at the June 26, 2015 hearing was limited to the abstention issue as well. Because this Court finds that *Younger* abstention is proper, this Court does not reach these other issues raised by the parties.

decision was intended "to guide other federal courts" and to "clarify and affirm that *Younger* extends to the three exceptional circumstances identified in [*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)], but no further." *Sprint*, 134 S. Ct. at 593-94 (internal quotation marks omitted).

The Attorney General asserts that the Alaska Proceeding warrants *Younger* abstention because it is both a civil enforcement proceeding akin to a criminal prosecution (i.e., the second *Younger* category) and a state proceeding that implicates the State's interest in enforcing the orders and judgments of its courts (i.e., the third *Younger* category). The Lupin Plaintiffs characterize the Alaska Proceeding as a discovery dispute that does not qualify under either the second or third *Younger* categories. Because this Court finds that this case clearly qualifies for the third category of *Younger* abstention, this Court need not reach the issue of whether this case also satisfies *Younger*'s second category.

### A) The Alaska Proceeding Implicates the State's Interest in Enforcing the Orders and Judgments of its Courts

In *Juidice v. Vail*, 430 U.S. 327 (1977), the Supreme Court found that abstention under *Younger* was appropriate in a federal class action suit brought by individuals who had been found in contempt by state court judges for disobeying subpoenas. The Court recognized that the same principles of federalism and comity that were emphasized in *Younger* also applied to cases involving a State's contempt process because "federal-court interference with the State's contempt process is an offense to the State's interest . . . likely to be every bit as great as it would be were [it] a criminal proceeding." *Juidice*, 430 U.S. at 335-36 (internal quotation marks omitted).

9

The Lupin Plaintiffs attempt to distinguish this case from *Juidice* on the basis of the type of subpoena at issue. In *Juidice*, the Supreme Court was faced with contempt proceedings arising out of an individual's failure to respond to a subpoena in a civil action between private parties. In this case, the civil investigative demands—essentially subpoenas—are administrative in nature. Specifically, AS § 45.50.592 authorizes the Attorney General to issue CIDs when the Attorney General believes a party may have documentary evidence believed to be relevant to an authorized antitrust investigation. Petitions pertaining to such demands "may be filed in the superior court for the judicial district in which the person on whom the demand is served resides." AS § 45.50.592(f).

The Lupin Plaintiffs acknowledge that courts have found that *Younger* abstention is appropriate in the face of similar civil investigative demands,[7] but argue that those cases were "eviscerate[d]" by the Supreme Court's opinion in *Sprint*. Pls.' Resp. at 8. The Lupin Plaintiffs argue that this case is instead analogous to *Google v. Hood*, --- F. Supp. 3d ----, 2015 WL 1546160 (S.D. Miss. Mar. 27, 2015), and that *Younger* abstention does not apply. In the *Google* case, the district court found that a subpoena issued under the Mississippi Consumer Protection Act by a state's attorney general did not fit into any of the three *Younger* types of cases. In reaching that conclusion, however, the district court noted that there was no pending attempt to enforce the subpoena.[8] *Id.* at *6 ("At this time, there is no ongoing state criminal prosecution relating to this matter, nor are there civil proceedings involving certain

---

[7] These cases include *Temple of the Lost Sheep, Inc. v. Abrams*, 761 F. Supp. 237, 242-43 (E.D.N.Y. 1989), and *Cuomo v. Dreamland Amusements, Inc.*, 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008).

[8] Notably, the district court also found that the subpoena had been issued in bad faith by the attorney general in response to Google's refusal to comply with certain requests made by the attorney general concerning Google's services.

orders uniquely in furtherance of the state courts' ability to perform their judicial functions."). Thus, the *Google* case is immediately distinguishable because the attorney general in that case never sought to enforce the subpoena through an action in the state court. In this case, the Attorney General has already filed a proceeding in Alaska Superior Court, thereby triggering judicial oversight of the CIDs. In this respect, therefore, the Lupin Plaintiffs' argument reveals itself as a mere distinction without a difference. The subpoenas at issue in *Juidice* were not issued by a court itself; instead, they were issued by a private party's attorney acting "as an officer of the court." 430 U.S. at 329 n2. Similarly, the CIDs in this case are issued by the Attorney General, but like in *Juidice*, can only be enforced after involving a state court. Accordingly, this Court finds that *Juidice* requires this Court to abstain under the third category of the *Younger* Doctrine.[9]

### B) The Alaska Proceeding as a Parallel Action

The Lupin Plaintiffs next argue that "this Court should not abstain in favor of the show cause petition because it is not a truly parallel state proceeding that raises the constitutional questions that Plaintiffs have presented in their federal complaint."[10] Pl.'s Resp. 12-13, ECF No. 32. The Lupin Plaintiffs argue that the proceeding will be restricted to whether the Lupin Plaintiffs willfully disobeyed the CIDs and that "it appears unlikely

---

[9] In light of this Court's holding with respect to the third *Younger* category, this Court sees no need to address the issue whether the Alaska Proceeding qualifies as a civil enforcement action akin to a criminal prosecution under the second *Younger* category.

[10] The Lupin Plaintiffs' argument on this point refers to three factors recognized in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982): (1) whether there is an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interest; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. *See id.* at 432. In *Sprint*, the Supreme Court clarified that these factors were "*additional* factors appropriated considered by the federal court before invoking *Younger*" rather than "dispositive" conditions. *See* 134 S. Ct. at 593.

that the Alaska superior court will decide the *defense* that the AG lacked constitutional authority to issue the CIDs to Plaintiffs." *Id.* at 13.  The Lupin Plaintiffs assert that the Alaska statute only expressly allows improper service of the CID to be raised and prohibits defenses going to a CID's validity; thus, the Lupin Plaintiffs argue that their challenge to the Attorney General's jurisdictional authority to even issue the CIDs to the Lupin Plaintiffs is an issue that will not be reached.

The Lupin Plaintiffs' speculation about the purported inadequacy of the Alaska proceeding fails to prevent the application of *Younger* abstention in this case.  The Supreme Court has explained that "the burden . . . rests on the federal plaintiff to show that state procedural law bar[s] presentation of its claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (internal quotation marks omitted).  "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* at 15.  The Lupin Plaintiffs have not cited to any case authority from Alaska that suggests constitutional or jurisdictional challenges cannot be raised in response to the show cause petition.  Indeed, such limitations is unlikely because the Alaska Superior Court is the court of general jurisdiction in the State.  Accordingly, while the statute is somewhat ambiguous as to the full gambit of defenses that may be raised during a show cause petition arising out of a CID, the Lupin Plaintiffs have failed to present unambiguous authority that would justify a conclusion by this Court that an Alaskan state judge would "interpret ambiguities in state procedural law to bar presentation of federal claims." *Id.*

    **C) The Timing of the State and Federal Actions**

The Lupin Plaintiffs next argue that abstention is inappropriate because, in its view, there have been proceedings on the merits in this case, and the Attorney General did not file the Alaska Proceeding until after the Lupin Plaintiffs filed their Motion for Preliminary Injunction in this Court.  Citing to *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984), the Lupin Plaintiffs argue that their motion for preliminary injunction "put the merits of the Plaintiffs' case in play." Pl.'s Resp. at 15.  However, in *Midkiff*, the district court had granted an injunction—i.e., there was a ruling on the issues raised by the parties.  In this case, however, the Court has not made any substantive rulings to date; therefore, there is no basis for this Court to refuse to abstain based upon proceedings on the merits in federal court.

### D) Exceptions to the *Younger* Doctrine

The Lupin Plaintiffs also argue that several of the exceptions to the *Younger* Doctrine apply to this case.  Indeed, the Supreme Court has recognized a few exceptions to *Younger* abstention.  These exceptions include state proceedings initiated in bad faith or for purposes of harassment.  Additionally, an exception exists where a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53-54.

#### 1) The Lupin Plaintiffs' Alleged Irreparable Loss of Constitutional Claims

The Lupin Plaintiffs assert that, through this action, they seek to "vindicate their constitutional right to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Pls.' Resp. at 16 (internal

marks omitted). In *Younger*, the Court alluded to the possibility of an exception for irreparable injury that is "both great and immediate." *See* 401 U.S. at 46. The Court clarified, however, that such a threat of injury to federally protected rights "must be one that cannot be eliminated by [the] defense against a single criminal prosecution," and that "the cost, anxiety, and inconvenience" of responding to a proceeding were insufficiently severe to prevent abstention. *Id.*

In this case, the concerns raised by the Lupin Plaintiffs—although undoubtedly relating to jurisdictional issues—boil down to harms arising from responding to the Alaska Proceeding itself. As discussed above, the Lupin Plaintiffs have failed to demonstrate that they have no way of vindicating their rights through the Alaska Proceeding and, thus, they have failed to show that the threatened harm constitutes an irreparable injury for purposes of *Younger*.

**2) The Alleged Retaliatory Nature of the Alaskan Proceeding**

The Lupin Plaintiffs argue that the Attorney General's show-cause petition is retaliatory because such a petition is warranted under Alaska law only when a recipient "willfully disobeys" a CID, but not when a recipient merely "challenges" a CID. *See* Mot. in Opposition, ECF No. 32. The question then becomes whether filing the present motion for injunctive relief constitutes a response to the CID under § 44.62.590(a)(2).

Plaintiffs argue that § 45.50.592(f), the provision outlining how a recipient may challenge a CID without being in contempt, could be interpreted to permit the present motion as a "response" for the purposes of § 44.62.590(a)(2). The statute reads in relevant part "a petition to extend the return date for, or to modify or set aside a demand issued

under (a) of this section, stating good cause, *may be filed in the superior court for the judicial district where the parties reside.*" Alaska Stat. Ann. § 45.50.592(f) (emphasis added).  The Lupin Plaintiffs contend that because the statute does not expressly foreclose the possibility of filing a challenge to a CID in a federal district court of a different state, the present action must be construed as a valid "response," and not a refusal that would justify the Attorney General's show-cause petition.  This argument is unpersuasive, as the context of the statute indicates contemplation of a "superior court," the common denomination of an intermediate court in Alaska, not a federal court established under Article III of the U.S. Constitution.  At best, such interpretive creativity hardly reveals the show-cause petition to be "bad faith" or "retaliatory" as alleged by the Lupin Plaintiffs.

### 3) The Alleged Waiver of the Abstention Issue

Plaintiffs next contend that by virtue of the Attorney General's motion for an extension to respond to Plaintiffs' motion for preliminary injunction, the Attorney General waived any claim for *Younger* abstention.  In support, Plaintiffs cite to *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986).  In *Ohio Civil Rights Comm'n*, the Supreme Court held that the United States District Court for the Southern District of Ohio properly abstained under *Younger* from enjoining the Ohio Civil Rights Commission from exercising jurisdiction over a sex discrimination complaint brought by a discharged teacher. *Id.*  In dicta, the Supreme Court explained that a State may "voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention," but noted that these were cases where "the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits." *Id.* at 626.  Requesting adjudication is hardly

15

analogous to filing a motion for an extension to respond to a Complaint. Quite simply, the Attorney General did not forfeit any argument under *Younger* by merely requesting an extension of time to respond.

## CONCLUSION

For the reasons stated above, Defendant Craig Richards' Motion to Dismiss (ECF No. 23) is GRANTED, and this case is DISMISSED.

A separate Order follows.

Dated:     July 2, 2015                         /s/
                                         Richard D. Bennett
                                         United States District Judge